IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

Pamela Brinkmann,

    Plaintiff.

v.

Michael Bagley, D.O.; Howmedica Osteonics Corp., d/b/a Stryker Orthopaedics; and Stryker Ireland, Limited, a foreign corporation and is a wholly owned subsidiary of Stryker Corporation,

    Defendants.

---

### COMPLAINT FOR DAMAGES AND JURY DEMAND
---

Plaintiff Pamela Brinkmann, by and through her attorneys, Leventhal & Puga, P.C., hereby submits her Complaint for Damages and Jury Demand, states and alleges the following:

### I. CERTIFICATE OF REVIEW

Pursuant to C.R.S. § 13-20-602(3)(a), counsel certifies as follows:

Counsel has consulted with physician(s) with expertise in the area(s) of the alleged negligent conduct;

The physician(s) who have been consulted have reviewed all known facts relevant to the allegations of negligent conduct; and,

Based upon such facts, these physician(s) have concluded that the filing of the claims against Defendant does not lack substantial justification within the meaning of C.R.S. § 13-17-102(4); and,

The physician(s) who have reviewed all known facts relevant to the allegations of negligent conduct meet the requirements set forth in C.R.S. § 13-64-401.

## II. JURISDICTION

1. Plaintiff Pamela Brinkmann is a citizen of the State of Colorado.

2. Defendant Michael Bagley, D.O. ("Defendant Bagley") is a citizen of the State of Arizona.

3. Defendant Howmedica Osteonics Corp., d/b/a Stryker Orthopaedics, is a corporation organized and existing under the laws of New Jersey, having its principal place of business located at 325 Corporate Drive, Mahwah, New Jersey 07430, and conducts business throughout the United States, including in the state of Colorado. Howmedica Osteonics Corp., dba Stryker Orthopaedics, is a wholly owned subsidiary of Stryker Corporation.

4. Defendant Stryker Ireland, Limited, is foreign corporation and is a wholly owned subsidiary of Stryker Corporation. Stryker Ireland has three facilities located in Ireland (two in Cork and one in Limerick) and employs approximately 1,200 people in total. These sites are held out as "centres of excellence" in R&D, Manufacturing and Customer Service. Stryker Ireland's product profile includes: Hip Replacement Systems, Knee Replacement Systems, Bone Cement and Precise Cutting Accessories, including Micro Rotary Instruments and Bone Saw Blades. Stryker develops minimally invasive surgical instruments, which are used for cutting, drilling, burring and shaping of bone and soft tissue. Upon information and belief, these products are used during Orthopaedic Surgery. Upon information and belief, much of the research and design and manufacturing of the Tritanium Primary Acetabular Shell and Stryker Modular Revision Hip System occurred at Stryker Ireland, before moving the operation to Howmedica Osteonics in Mahwah, New Jersey.

5. The devices manufactured at Stryker Ireland were sold throughout the United States and in the state of Colorado.

6. Both Defendants are conclusively presumed to have been doing business in this state and are subject to Colorado's long arm jurisdiction.

7. Jurisdiction is proper in this Court under 28 U.S.C §1332, by reason of the diversity of citizenship of the Parties, and the amount and controversy, exclusive of interest and costs, exceeds $75,000.00.

8. Plaintiff resides in the State of Colorado.

9. The tortious that gives rise to the claims alleged herein occurred in the State of Colorado.

10. Venue is proper in this Court under 28 USC §1391.

### III. GENERAL ALLEGATIONS

11. Plaintiff incorporates by reference paragraphs 1 through 10 of this Complaint as if fully set forth herein.

12. At all relevant times, Plaintiff Pamela Brinkmann was a resident of the State of Colorado.

13. At all relevant times, Defendant Bagley was a physician licensed to practice medicine in the State of Colorado, holding himself out as a specialist in orthopedic surgery.

14. At all times material hereto, Defendant Howmedica Osteonics Corp, d/b/a Stryker Orthopaedics and Stryker Ireland, limited (hereinafter referred to collectively as "Defendant Stryker") developed, tested, assembled, manufactured, packaged, labeled, prepared, distributed, marketed, supplied, and/or sold the Tritanium Primary Acetabular Shell and the Stryker Modular Revision Hip System either directly or indirectly, to members of the general public within the

State of Colorado and outside the State of Colorado, including to plaintiff herein.

15. Defendant Stryker placed the Tritanium Primary Acetabular Shell and Stryker Modular Revision Hip System into the stream of interstate commerce and was implanted in Plaintiff.

16. Upon information and belief, Defendant Stryker developed, tested, assembled, manufactured, packaged, labeled, prepared, distributed, marketed, supplied, and/or sold the Tritanium Primary Acetabular Shell and the Stryker Modular Revision Hip System to the general public with the knowledge that its products had defective designs.

17. On April 1, 2014, Plaintiff Pamela Brinkmann presented to Defendant Dr. Bagley with severe pain.

18. Defendant Dr. Bagley diagnosed her with a pelvic cyst and referred her to her primary care physician.

19. On April 1, 2014, Plaintiff Pamela Brinkmann underwent an MRI of her right hip.

20. The MRI showed findings most consistent with a nondisplaced fracture of the right femoral head of the hip.

21. On April 3, 2014, Plaintiff Pamela Brinkmann presented to Defendant Dr. Bagley.

22. Defendant Dr. Bagley reviewed the MRI imaging which showed a fracture pattern in the right femoral head of her hip.

23. Defendant Dr. Bagley recommended a bone scan at this appointment.

24. On April 10, 2014, Plaintiff Pamela Brinkmann underwent a bone scan.

25. On April 15, 2014, Plaintiff Pamela Brinkmann presented to Defendant Bagley.

26. Defendant Dr. Bagley diagnosed her with avascular necrosis of the right femoral head at this appointment.

27. During this appointment, Defendant Dr. Bagley recommended right total hip arthroplasty.

28. On April 21, 2014, Plaintiff Pamela Brinkmann presented to St. Anthony North Hospital for right total hip arthroplasty surgery with Defendant Dr. Bagley.

29. During surgery, Defendant Dr. Bagley found no obvious abnormalities of the femoral head.

30. On April 21, 2014, Plaintiff Pamela Brinkmann underwent an x-ray of the pelvis for post-operative examination status.

31. On April 23, 2014, Plaintiff Pamela Brinkmann was discharged from St. Anthony North Hospital.

32. On May 1, 2014, Plaintiff Pamela Brinkmann presented to Defendant Dr. Bagley for a post-operative appointment.

33. Defendant Dr. Bagley found Plaintiff Pamela Brinkmann had right foot drop and burning sensations at this appointment.

34. On May 1, 2014, Plaintiff Pamela Brinkmann underwent an x-ray of the right hip.

35. On May 29, 2014, Plaintiff Pamela Brinkmann presented to Defendant Bagley for a post-operative appointment.

36. Defendant Dr. Bagley noted Plaintiff Pamela Brinkmann continued to have right foot drop and burning sensations at this appointment.

37. Defendant Dr. Bagley noted Plaintiff Pamela Brinkmann had numbness in her big toe at this appointment.

38. Defendant Dr. Bagley noted Plaintiff Pamela Brinkmann had no active dorsiflexion in the right ankle at this appointment.

39. Defendant Dr. Bagley recommended an electromyography at this appointment.

40. On May 29, 2014, Plaintiff Pamela Brinkmann underwent an x-ray of her right hip.

41. On June 5, 2014, Plaintiff Pamela Brinkmann underwent an electromyography.

42. The electromyography found severe acute right peroneal nerve compromise above the fibular head affecting the sensory and motor components.

43. On June 23, 2014, Plaintiff Pamela Brinkmann dislocated her right hip and was transported by ambulance to the emergency department at St. Anthony North Hospital.

44. On June 24, 2014, Plaintiff Pamela Brinkmann presented to Defendant Dr. Bagley for a post-operative appointment.

45. At this appointment. Defendant Dr. Bagley gave Plaintiff Pamela Brinkmann a cortisone injection in her left knee because of overuse.

46. On June 26, 2014, Plaintiff Pamela Brinkmann presented to Defendant Dr. Bagley to fit a brace for her right hip.

47. On July 10, 2014, Plaintiff Pamela Brinkmann dislocated her right hip for a second time and presented to the emergency department at St. Anthony North Hospital.

48. On July 15, 2014, Plaintiff Pamela Brinkmann presented to Defendant Dr. Bagley due to her second hip dislocation.

49. At this appointment, Defendant Dr. Bagley recommended Plaintiff Pamela Brinkmann see Jeremy R. Kinder, M.D. ("Dr. Kinder"), a hip revision specialist.

50. Following this appointment, Plaintiff Pamela Brinkmann began treating with Dr. Kinder.

51. Upon information and belief, a Defendant Stryker representative marketed and

sold the Tritanium Primary Acetabular Shell and Stryker Modular Revision Hip System to Defendant Dr. Bagley for Plaintiff Pamela Brinkmann's hip surgery.

52. On July 31, 2014, Plaintiff Pamela Brinkmann underwent a right hip revision surgery with Dr. Kinder at Presbyterian/St. Luke's Hospital.

53. Defendant Bagley provided negligent and inappropriate care to Plaintiff pertaining to the care and treatment of her right hip replacement.

54. As a direct and proximate result of the negligent care and treatment provided by Defendant Bagley, Plaintiff has severe, disabling, and crippling injuries. Plaintiff, who is approximately 62 years old, must use a brace and a cane, experiences ongoing pain, and is likely to have to undergo additional surgical procedures, among other things.

55. Plaintiff's injuries are permanent.

56. Plaintiff's injuries are directly and proximately caused by the negligence of Defendant Bagley.

### IV. FIRST CLAIM FOR RELIEF
(Strict Products Liability – Defective Design - Howmedica Osteonics Corp., d/b/a Stryker Orthopaedics and Stryker Ireland, Limited as a Wholly Owned Subsidiary of Stryker Corporation)

57. Plaintiff incorporates by reference Paragraphs 1 through 56 of this Complaint as if fully set forth herein.

58. This is an action for strict liability based upon design defect against Defendant Stryker.

59. Defendant Stryker's Tritanium Primary Acetabular Shell and the Stryker Modular Revision Hip System are designed in such a way that, when used as intended, causes serious, permanent, and devastating damage to patients in whom the devices are implanted. The damage

and mechanism of injury have been previously described herein. Defendant Stryker acted unreasonably in its design of these products in that Defendant Stryker failed to adopt a safer design for these products that was practical, feasible, and otherwise a reasonable alternative design or formulation that would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the product.

60.     Defendant Strykers's Tritanium Primary Acetabular Shell and the Stryker Modular Revision Hip System do not perform as safely as an ordinary consumer would expect when used as intended or in a manner reasonably foreseeable to Defendant Stryker.

61.     The risks of using Defendant Strykers's Tritanium Primary Acetabular Shell and the Stryker Modular Revision Hip System outweigh the benefits of using these devices.

62.     There were numerous safer alternative designs to the Defendant Strykers's Tritanium Primary Acetabular Shell and the Stryker Modular Revision Hip System which in reasonable probability would have prevented or significantly reduced the risk of the personal injuries suffered by Plaintiff without substantially impairing the product's utility and such safer alternative designs were economically and technologically feasible at the time the either product left the control of Defendant Stryker by the application of existing or reasonably-achievable scientific knowledge.

63.     The design defects in Defendant's Tritanium Primary Acetabular Shell and the Stryker Modular Revision Hip System caused serious damage to Plaintiff herein, including one or more of the following: bodily injury; pain and suffering; disability; physical impairment; disfigurement; mental anguish; inconvenience; aggravation of a pre-existing condition; loss of the capacity for the enjoyment of life; the costs of medical care and expenses; loss of earnings;

and loss of the ability to earn money, all of which damages and losses will continue in the future.

## V. SECOND CLAIM FOR RELIEF
### (Strict Products Liability – Manufacturing Defect - Howmedica Osteonics Corp., d/b/a Stryker Orthopaedics and Stryker Ireland, Limited as a Wholly Owned Subsidiary of Stryker Corporation)

64. Plaintiff incorporates by reference Paragraphs 1 through 63 of this Complaint as if fully set forth herein.

65. This is an action for strict liability based on a manufacturing defect.

66. Both the Tritanium Primary Acetabular Shell and the Stryker Modular Revision Hip System were designed to be compatible with human tissue and bone.

67. Both the Tritanium Primary Acetabular Shell and the Stryker Modular Revision Hip System implanted in Plaintiff began failing a short period of time after her surgery.

68. Both the Tritanium Primary Acetabular Shell and the Stryker Modular Revision Hip System installed in Plaintiff's hip were not compatible with human tissue and bone. Through a process of fretting and corrosion, both the Tritanium Primary Acetabular Shell and the Stryker Modular Revision Hip System released heavy metals into Plaintiffs body causing severe and permanent destruction of bone and tissue. Defendant failed to manufacture either product in a manner that prevented fretting and corrosion, and, in fact, manufactured both products such that it caused fretting and corrosion.

69. Both the Tritanium Primary Acetabular Shell and the Stryker Modular Revision Hip System implanted in the hips of Plaintiff herein contained manufacturing defects.

70. The manufacturing defects in both the Tritanium Primary Acetabular Shell and the Stryker Modular Revision Hip System implanted in the hips of Plaintiff caused serious

damage to Plaintiff including one or more of the following: bodily injury; pain and suffering; disability; physical impairment; disfigurement; mental anguish; inconvenience; aggravation of a pre-existing condition; loss of the capacity for the enjoyment of life; the costs of medical care and expenses; loss of earnings; and loss of the ability to earn money, all of which damages and losses will continue in the future.

## VI.  THIRD CLAIM FOR RELIEF
(*Respondeat Superior* – Howmedica Osteonics Corp., d/b/a Stryker Orthopaedics and Stryker Ireland, Limited as a Wholly Owned Subsidiary of Stryker Corporation)

71.  Plaintiff incorporates by reference Paragraphs 1 through 70 of this Complaint as if fully set forth herein.

72.  Upon information and belief, Defendant Stryker had a representative, John/Jane Doe, in the operating room that provided a service to Defendant Dr. Bagley to advise him on the proper selection and surgical installation of Defendant Stryker's medical implants.

73.  John/Jane Doe's identity is not in the medical records.

74.  Upon information and belief, Defendant Stryker was responsible for the negligent acts and/or omissions of its employees, agents, officers, and/or servants acting within the scope and course of their employment.

75.  Upon information and belief, at all relevant times, Defendant John/Jane Doe was an employee, agent, officer and/or servant of Defendant Stryker.

76.  Upon information and belief, at all relevant times, Defendant John/Jane Doe was acting within the course and scope of his employment or within his authority as an employee, agent, officer or servant of Defendant Stryker.

77.  Defendant John/Jane Doe was negligent and breached his duty of care as more fully described above.

78. Upon information and belief, this individual selected the wrong product for Plaintiff Pamela Brinkmann.

79. Upon information and belief, this individual failed to correct the negligent choice by Defendant Dr. Bagley regarding which surgical implant to use in the Plaintiff's surgery.

80. As a direct and proximate result of the negligence of Defendant Stryker, acting through its employees, agents, officers, and/or servants, including Defendant John/Jane Doe, who was acting within the course and scope of his employment or within his authority, Plaintiffs suffered severe injuries, damages, and losses as more fully described above.

## VII. FOURTH CLAIM FOR RELIEF
### (Medical Negligence – Michael Bagley, D.O.)

81. Plaintiff incorporates by reference Paragraphs 1 through 80 of this Complaint as if fully set forth herein.

82. At all relevant times, Plaintiff Pamela Brinkmann was under the care and treatment of Defendant Bagley.

83. With respect to his care and treatment of Plaintiff Pamela Brinkmann, Defendant Dr. Lamond had a duty to exercise that degree of care, skill, caution, diligence, and foresight, exercised by and expected of surgeons in similar situations. Defendant Bagley deviated from that standard and was negligent, including, but not limited to, the following:

   a. Failing to properly evaluate, diagnose, and treat Plaintiff's medical condition;

   b. Failing to provide timely and appropriate medical testing and treatment to Plaintiff;

      c.     Failing to timely recognize and appropriately address the neurological issues in Plaintiff's right hip;

      d.     Failing to utilize an appropriate device as part of the right hip replacement surgery; and,

      e.     Failing to provide appropriate care and treatment to Plaintiff's right hip replacement.

84. Defendant Dr. Bagley breached his duty and was negligent in his care and treatment of Plaintiff Pamela Brinkmann.

85. As a direct and proximate result of the negligence of Defendant Dr. Bagley, Plaintiff has suffered significant and permanent physical impairment and disfigurement, emotional distress, mental anguish, and physical suffering. Plaintiff's injuries have been and will continue to be disabling, incapacitating, and humiliating. Plaintiff's injuries are permanent. Plaintiff will be forced to spend money in the future for medications, prescriptions, hospital care, x-rays, doctors' fees, surgical procedures, rehabilitation, physical therapy, other types of therapy, and long term care and assistance. Plaintiff has suffered a loss of earning capacity for the future. Plaintiff has suffered and will suffer a loss of the ability to enjoy a full, useful, and normal life.

86. As a direct and proximately result of the negligence of Defendant Bagley, Plaintiff suffered injuries, damages, and losses more fully described above.

WHEREFORE, Plaintiff prays for compensatory damages in favor of the Plaintiff and against the Defendant in an amount to be determined by the trier of fact, pre-judgment interest as allowed by law, post-judgment interest as allowed by law, all costs permitted by applicable law, witness fees, filing fees, deposition expenses, attorney's fees, and for such other and further relief as this Court may deem appropriate, including all costs.

PLAINTIFF REQUESTS A TRIAL TO A JURY.

Respectfully submitted this 20th day of April, 2016.

                LEVENTHAL & PUGA, P.C.

By: *s/ Alex R. Wilschke*
      James E. Puga, Atty. No. 18960
      Alex R. Wilschke, Atty. No. 33086
      Leventhal & Puga P.C.
      950 South Cherry Street, Suite 600
      Denver, CO 80249

      **ATTORNEYS FOR PLAINTIFF**
      **PAMELA BRINKMANN**

Plaintiff's Address:

Pamela Brinkmann
3313 West 109th Circle
Westminster, Colorado 80031