IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-00892-KLM

PAMELA BRINKMANN,

      Plaintiff,

vs.

MICHAEL BAGLEY, D.O.,
HOWMEDICA OSTEONICS CORP., a New Jersey corporation, doing business as Stryker
Orthopaedics, and
STRYKER IRELAND, LIMITED, a foreign corporation,

      Defendants.

---

## DEFENDANT HOWMEDICA OSTEONICS CORP.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

---

      Defendant Howmedica Osteonics Corp. d/b/a Stryker Orthopaedics ("HOC")[1],

respectfully moves to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). As

grounds for this motion, HOC states:

## I.     Introduction

      Plaintiff Pamela Brinkmann ("Brinkmann") had a total hip replacement performed by

Dr. Michael Bagley, D.O. ("Dr. Bagley") on April 21, 2014. (Compl. at ¶¶ 28-29). Although not

entirely clear, Brinkmann appears to allege that Dr. Bagley implanted a Tritanium Primary

Acetabular Shell and Stryker Modular Hip System into her at that time, even though Dr. Bagley

---

[1] Defendant Stryker Ireland, Limited has not been properly served and, therefore, is not a party to this case. Also, HOC is improperly identified, as "Stryker Orthopaedics" is not an official d/b/a of HOC.

"found no obvious abnormalities of the femoral head" of Brinkmann's hip during surgery. (Compl. at ¶¶ 15-16, 29). Brinkmann claims that as a result of her hip replacement surgery, she has suffered a right foot drop, burning sensation, numbness in her big toe, severe acute right peroneal nerve compromise, two hip dislocations and a hip implant revision. (Compl. at ¶¶ 33, 36-37, 42-43, and 47). Significantly, however, Brinkmann does not identify what specific model hip replacement device was implanted in her during her April 21, 2014 surgery. Further, although she alleges two strict liability claims for design defect and manufacturing defect, Brinkmann does not state how any aspect of the design of the (unidentified) hip implant caused it to be unreasonably dangerous or how the hip implant she allegedly received was improperly manufactured. Accordingly, Brinkmann has not stated valid claims for either design defect or manufacturing defect.

Additionally, Brinkmann asserts a *respondeat superior* claim against HOC based on "negligent acts and/or omissions" of an unidentified HOC representative who she claims was in the operating room during her April 21, 2014 surgery and suggested that Dr. Bagley use the incorrect hip implant. (Compl. at ¶¶ 72-78). But Brinkmann has not alleged any facts establishing a duty on the part of that alleged representative or how any such duty, if it existed, was breached. In fact, the surgeon is in control of the operating room—not HOC nor any HOC representative—and only the surgeon is responsible for any decisions made during the course of surgery under the "captain of the ship" doctrine. Brinkmann has, therefore, failed to state a valid claim for *respondeat superior* against HOC. For these reasons, Brinkmann's Complaint against Defendant HOC should be dismissed.

## II.      Statement of Facts

Brinkmann alleges the following in her Complaint, which is taken as true for purposes of this Motion only:  on April 21, 2014, Brinkmann underwent right total hip arthroplasty surgery performed by Dr. Bagley at St. Anthony North Hospital. (Compl. at ¶ 28). Although the Complaint alleges that this surgery was recommended to treat "avascular necrosis of the right femoral head," it also alleges that Dr. Bagley found "no obvious abnormalities of the femoral head" during the surgery. (*Id.* at ¶¶ 26-27, 29). Brinkmann alleges that the "Tritanium Primary Acetabular Shell and Stryker Modular Revision Hip System ... was implanted in Plaintiff." (*Id.* at ¶ 15). After the surgery, on May 1, 2014 and again on May 29, 2014, Dr. Bagley diagnosed Brinkmann with a "right foot drop" and a burning sensation in an undisclosed location. (Compl. at ¶¶ 32-33, 35-36). Brinkmann also complained of "numbness in her right toe" at her May 29, 2014 appointment. (*Id.* at ¶ 37). On June 5, 2014, Dr. Bagley diagnosed Brinkmann with "severe acute right peroneal nerve compromise above the fibular head affecting the sensory and motor components." (*Id.* at ¶¶ 41-42). On June 23, 2014 and again on July 10, 2014, Brinkmann dislocated her right hip. (*Id.* at ¶¶ 43 and 47). Brinkmann underwent a right hip revision surgery with Dr. Jeremy R. Kinder at Presbyterian/St. Luke's Hospital on July 31, 2014. (*Id.* at ¶ 52). Brinkmann alleges that she has pain, "severe, disabling, and crippling injuries" and "must use a brace and a cane" as a direct and proximate result of Dr. Bagley's "negligent and inappropriate care." (*Id.* at ¶¶ 53-56).

The Complaint does not allege any facts related to the performance, function or retrieval of the alleged explanted HOC hip implant. Further, Plaintiff does not allege any findings whatsoever regarding her July 2014 hip revision surgery, including what revision device was

implanted. In addition, while HOC does market various models of a hip replacement component called the Tritanium Primary Acetabular Shell, there is no product called the "Stryker Modular Revision Hip System."[2] As such, it is impossible to determine from the alleged facts what precise medical device is at issue in this case. In addition, Brinkmann alleges no facts related to the design of the (unidentified) HOC hip implant, including the material(s) that the device was made of. Instead, Brinkmann vaguely alleges that the implant was "designed in such a way that, when used as intended, causes serious, permanent, and devastating damage to patients in whom the devices are implanted." (*Id.* at ¶ 59). While Brinkmann vaguely alleges that "the damage and mechanism of injury have been previously described herein" (*Id.*), nowhere in the Complaint does she specifically identify any particular injuries allegedly caused by or related to the (unidentified) HOC hip implant in place for approximately three months (from April 21, 2014 until July 31, 2014). Just as importantly, nowhere does Brinkmann allege any facts demonstrating *how* the implant caused any of her injuries.

Brinkmann does allege, in her manufacturing defect claim, that the (unidentified) HOC implant was "not compatible with human tissue and bone" and that the implant released "heavy metals" into Plaintiff's body through "fretting and corrosion." (*Id.* at ¶ 68). But, nowhere does she identify what metals were released or what problems they allegedly caused her. She does not allege any supporting facts related to any fretting or corrosion of the implant, including any that show that any fretting or corrosion even occurred. Similarly, although Brinkmann alleges

---

[2] Brinkmann references her "medical records" in the Complaint. (*See* Compl. at ¶ 73). These surgical medical records should have included a "Device Implant Log" that contained stickers removed from each device and detailed exactly what devices were implanted, including individual product identification codes for each.

"severe and permanent destruction of bone and tissue" (*Id*.), nowhere in the Complaint does she identify any specific diagnosis by a physician that such injuries occurred nor does she otherwise allege any injury to her bones or tissues related to any metals or to the hip implant.

**III.    Plaintiff's Complaint Should Be Dismissed for Failure to State a Claim.**

**A.    Standard of Review**

Plaintiff's Complaint asserts two strict product liability claims:  design defect (First Claim for Relief) and manufacturing defect (Second Claim for Relief). (Compl. at ¶¶ 57-70). Plaintiff also asserts a *respondeat superior* claim against HOC for alleged negligence of an unidentified representative who was allegedly in the operating room. (*Id*. at ¶¶ 72-80). Brinkmann's claims are subject to the pleading requirements of Fed. R. Civ. P. 8, which requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a complaint fails to satisfy Rule 8, it "must be dismissed" under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1973-74 (2007). Even under the liberal pleading standard of Rule 8, a plaintiff must do more than merely recite the elements of the claim and must "provide the grounds of [its] entitlement to relief." *Id.* at 555 (internal quotes and citations omitted). Specifically, to survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1949 (internal quotes omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id*. (internal quotations and citation omitted). Thus, when a claim

does not, at a minimum, "give the defendant fair notice of what the claim is and the grounds upon which it rests," the Court should dismiss that claim. *Twombly*, 127 S. Ct. at 1964 (internal quotations omitted).

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248.

**B.    Plaintiff's Product Liability Claims Do Not Provide Adequate Notice To HOC Of The Basis For Relief And Should Be Dismissed.**

**1.    Plaintiff Does Not Allege Any Defect in the Design of the Hip Implant.**

For her first claim for strict product liability, Plaintiff alleges that the unspecified HOC implant at issue was defectively designed. (*See* Compl. at ¶ 59). The elements of a strict product liability claim for design defect in Colorado are: "(1) the product is in a defective condition unreasonably dangerous to the user or consumer; (2) the product is expected to and does reach the consumer without substantial change in the condition in which it was sold; (3) the design defect caused the plaintiff's injury; (4) the defendant sold the product and is engaged in the

business of selling products; and (5) the plaintiff sustained damages." *Barton v. Adams Rental, Inc.*, 938 P.2d 532, 536-37 (Colo. 1997). To determine whether a product is "unreasonably dangerous" under the first element above in the context of a design defect claim, Colorado courts have adopted a straightforward risk-benefit analysis, where the "proponents of a design defect claim bear the burden of demonstrating that, on balance, the risk of danger inherent in a challenged ***design*** outweighs the benefits of such a ***design***." *Id.* at 537, *citing Armentrout v. FMC Corp.*, 842 P.2d 175, 183 (Colo.1992) (emphasis added).

Here, the sole factual allegation related to the alleged design defect is that the hip implant was "designed in such a way that, when used as intended, causes serious, permanent, and devastating damage to patients in whom the devices are implanted." (Compl. at ¶ 59). Critically, however, Brinkmann does not allege any facts describing what was wrong with or defective about the design of the hip implant, much less what made it unreasonably dangerous. Although Brinkmann vaguely alleges that the implant released some unidentified "heavy metals" into her body through "fretting and corrosion" (*Id.* at ¶ 68), she fails to explain what metals were released, when that took place and, most importantly, what, if any, effect it had on her. Simply put, Brinkmann does not allege that any aspect in the ***design*** of the (unidentified) HOC implant caused it to be unreasonably dangerous. *See Armentrout*, 842 P.2d at 187 (holding that in the context of a design defect claim, a defect requires that some aspect of the product's ***design*** render it unreasonably dangerous). The remainder of Brinkmann's design defect allegations consist of formulaic recitations of elements of her claim. (*See* Compl. at ¶¶ 59-63). As such, even if taken as true, Plaintiff's naked assertions are devoid of any factual enhancement, do not give HOC fair notice of any grounds upon which the design defect claim

rests, and are not sufficiently plausible to satisfy the requirements of Rule 8. *Robbins.*, 519 F.3d at 1248. Thus, Brinkmann's design defect claim should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### 2.     Plaintiff Does Not Allege Any Defect in the Manufacture of the Hip Implant.

For her Second Claim for Relief, Brinkmann alleges that the (unidentified) HOC implant contained manufacturing defects. (*See* Compl. at ¶¶ 65 and 69). Although the elements of a product liability claim based on manufacturing defect are the same as those stated above, the first, "unreasonably dangerous," element requires that a plaintiff show that the product as produced either did not conform with the manufacturer's specifications, *see Comacho v. Honda Motor Co., Ltd.*, 741 P.2d 1240, 1247 (Colo. 1997), or that the product "deviates in some material way from its design or performance standards." *See Wheeler v. HO Sports Inc.*, 232 F.3d 754, 757 (10th Cir. 2000). That is, in order to state a product liability claim based on manufacturing defect, Brinkmann must adequately allege facts demonstrating that the particular product she received was not manufactured as the manufacturer intended.

Here, as described above, Brinkmann claims that the hip implant released some unidentified amount of some unidentified "heavy metals" into her body due to "fretting and corrosion." (*Id*. at ¶ 68). Brinkmann vaguely alleges that "Defendant failed to manufacture either product in a manner that prevented fretting and corrosion, and, in fact, manufactured both products such that it (sic) caused fretting and corrosion." (*Id*.) Brinkmann, however, alleges no facts related to how her particular implant was manufactured out of specifications, deviated from its design or performance standards, or how such improper manufacturing made the implant unreasonably dangerous. And as with the design defect claim, the remainder of

Brinkmann's manufacturing defect allegations consist of formulaic recitations of elements of her claim. (*See* Compl. at ¶¶ 65-70).

These conclusory allegations are insufficient under the Rule 8 requirements of *Iqbal* and *Twombly*. Absent more information, Plaintiff's allegations constitute "naked assertions devoid of further factual enhancement." *Iqbal*, 129 S.Ct. at 1949. In fact, Brinkmann does not state any facts demonstrating that there was any manufacturing defect at all. As such, Plaintiff's Complaint fails to state a plausible manufacturing defect claim and should be dismissed. *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 127 S. Ct. at 1964.

Accordingly, Plaintiff's two strict products liability claims—based on either design defect or manufacturing defect—do not set forth the factual basis required under *Iqbal* and *Twombly*. Therefore, Plaintiff's First and Second Claims for Relief should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### C.   Under the "Captain of The Ship" Doctrine, Plaintiff's Surgeon, not HOC's Representative, Had the Duty to Decide Which Implant to Use.

Brinkmann also asserts a claim for *respondeat superior* based on some alleged negligence of an unidentified HOC representative. (*See* Compl. at ¶¶ 72-77). Brinkmann alleges, "[u]pon information and belief," that "Defendant Stryker" had a representative in the operating room to advise Dr. Bagley "on the proper selection and surgical installation" of HOC's surgical implants. (*Id*. at ¶ 72). Notably, virtually all of Plaintiff's allegations related to this unidentified HOC representative are made "upon information and belief." (*See Id*. at ¶¶ 72, 74-76, 78-79). Although the *Twombly* plausibility standard does not prohibit allegations made "upon information and belief," such allegations are only appropriate "where the facts are peculiarly within the possession and control of the defendant." *Greenway Nutrients, Inc. v.*

*Blackburn*, Civ. No. 13-CV-01088-MSK-KMT, 2015 WL 1524941, at *11 (D.Colo. Feb. 23, 2015), report and recommendation adopted, No. 13-CV-01088-MSK-KMT, 2015 WL 1539027 (D.Colo. Mar. 31, 2015) (*quoting Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). But where the plaintiff has equal or better access to such information, such allegations are insufficient. *See Barnes v. Harris*, 783 F.3d 1185, 1196-97 (10th Cir. 2015) (refusing a "more relaxed pleading standard" where the facts in question were not entirely within the defendants' control, but equally accessible to the plaintiff as well); *see also, Burnett v. Mortgage Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1240 (10th Cir. 2013) (holding that the failure to include factual details that plaintiff was "well positioned to know" was "fatal to the complaint."). As alleged in the Complaint, Plaintiff has the records of her surgery and, therefore, has equal or superior knowledge than HOC regarding the facts surrounding her surgery.

More importantly, Plaintiff has not alleged sufficient facts to plausibly state a claim for *respondeat superior* against HOC. "[T]he doctrine of *respondeat superior* is based on the theory that the employee acts on behalf of the employer when the employee is within the scope of his or her employment." *Raleigh v. Performance Plumbing and Heating,* 130 P.3d 1011, 1019 (Colo. 2006). "In such circumstances, the employer is vicariously liable for the employee's negligent acts." *Id*. at 1019. However, in the surgical context, it is the *surgeon* who is responsible for the actions and negligence (if any) of every agent in the operating room— including medical device sales representatives. *O'Connell v. Biomet, Inc.*, 250 P.3d 1278, 1283-84 (Colo.App. 2010) (holding that "[a] licensed physician is the principal or master while performing medical services within a hospital," and is thus liable for any acts of negligence of

hospital personnel, including medical device sales representatives, that occur during the surgery) (citing *Kitto v. Gilbert*, 570 P.2d 544, 549 (Colo.App. 1977)).

Here, Brinkmann alleges, once more "[u]pon information and belief," that this unidentified representative "selected the wrong product for Plaintiff" and "failed to correct the negligent choice by Defendant Dr. Bagley regarding which surgical implant to use in Plaintiff's surgery." (Compl. at ¶¶ 78 and 79). Plaintiff does not allege any facts supporting the prerequisite conclusion that the (unidentified) HOC implant used in her April 21, 2014 surgery was inappropriate or the wrong implant. But, more fundamentally, in making the above allegations, Plaintiff implies that this unidentified "representative" had some affirmative duty to make medical decisions that are made by a licensed physician. Plaintiff does not—and cannot— allege that an HOC sales representative stepped in for Plaintiff's surgeon and affirmatively made medical decisions on Dr. Bagley's behalf. In fact, Plaintiff acknowledges that the opposite was true: she was under the treatment and care of Dr. Bagley—not some non-physician sales representative. (*See Id*. at ¶ 82).

Thus, as the treating surgeon, Dr. Bagley was the "captain of the ship" and was responsible for all actions of any sales representative in the operating room under Colorado law. *O'Connell*, 250 P.3d at 1283-84. Accordingly, Plaintiff may not assert a medical malpractice claim against HOC by vaguely (and inadequately) alleging simple negligence on the part of an unidentified sales representative who allegedly advised a surgeon on product selection and installation. Brinkmann's conclusory allegations are insufficient to state a claim for *respondeat superior* against *HOC* under the Rule 8 requirements of *Iqbal* and *Twombly* and should be dismissed. *Iqbal*, 129 S.Ct. at 1949; *Twombly*, 127 S.Ct. at 1964.

**IV.     Conclusion**

For the foregoing reasons, Defendant Howmedica Osteonics Corp. respectfully requests

that this Court dismiss Plaintiff's Complaint against it in its entirety.

Dated:  July 7, 2016.

Respectfully submitted,

/s J. Lee Gray
Maureen Reidy Witt, Atty. No. 10665
J. Lee Gray, Atty. No 27306
HOLLAND & HART LLP
6380 South Fiddlers Green Circle, Suite 500
Greenwood Village, CO  80111
Tel.: (303) 290-1600
Fax: (303) 290-1606
mwitt@hollandhart.com
lgray@hollandhart.com

**ATTORNEYS FOR DEFENDANT HOWMEDICA
OSTEONICS CORP.**

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2016, I have caused to be electronically filed the foregoing with the Clerk of Court using CM/ECF system which will send notification of such filing to the following e-mail addresses:

Alex R. Wilschke (awilschke@leventhal-law.com)

s/ Adele C. Lee

8923690_3